IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JAVIER VALDEZ,

       Plaintiff,

v.                                            CIV 16-1084 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

       Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff Javier Valdez's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*), filed April 4, 2017. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc.27*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court will deny the Motion.

## I.    Introduction

Plaintiff claims that he became disabled in 2008 due to various physical impairments. The Administration agrees in part. It has found that Plaintiff became disabled on December 2, 2013, for the purposes of Title XVI of the Act. However, the Administration has now denied Plaintiff's claim under Title II of the Act three times, and affirmed its decision that Plaintiff was not disabled prior to December 2, 2013, for the purposes of Title XVI. In this most recent denial, Administrative Law Judge ("ALJ") Raul Pardo ascribed "little weight" to the opinion of Elizabeth Etherton, CNP, and found that Plaintiff's physical pain does not preclude him from working. Plaintiff argues that the ALJ erred as a matter of law by failing to give proper

1

consideration to Ms. Etherton's opinions, and that the ALJ's RFC is not based on substantial evidence "because he failed to account for Mr. Valdez's functional limitations stemming from pain and other symptoms." *Doc. 18* at 1. For the reasons stated below, the Court disagrees.

## II.    Procedural History

Plaintiff filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on April 22, 2008. *AR* at 183-187.[1] Plaintiff alleged a disability onset date of February 25, 2008, the day he stopped working, due to "chronic inflammatory arthritis [and] kidney problems." *AR* at 183, 207. Plaintiff most recently worked as a roofer. *AR* at 208. Plaintiff claimed that he can no longer do this work because he has "swelled legs, ankles, [he] can't bend and lift things, can't walk." *AR* at 207. *See also AR* at 515 (testimony) ("I was having problems with my feet. It started getting swollen and also and then it started going up into my back.").

The Administration denied Plaintiff's claims initially and upon reconsideration, and he requested a *de novo* hearing before an administrative law judge. *AR* at 85-98. ALJ Ann Farris held an evidentiary hearing on December 18, 2009. *AR* at 45-61. On March 9, 2010, she issued an unfavorable decision, finding that Plaintiff "has not been under a disability within the meaning of the Social Security Act from February 25, 2008, through the date of [her] decision." *AR* at 65-79. Plaintiff filed a "Request for Review of Hearing Decision/Order" on March 19, 2010. *AR* at 122. On November 30, 2010, the Appeals Council remanded the case to ALJ Farris for further analysis, and a supplemental hearing was held on December 15, 2011. *AR* at 25-44, 80-84, 148. After that hearing, ALJ Farris again issued an unfavorable decision on April 5, 2012. *AR* at 9-24. Plaintiff then again requested Appeals Council review on May 17, 2012. *AR* at 7.

---

[1] Document 11-1 comprises the sealed Certified Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

This time, however, the Council denied review on November 6, 2013, rendering ALJ Farris's decision the final decision of the Commissioner. *See AR* at 1-4; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

Plaintiff appealed ALJ Farris's decision to this Court on January 6, 2014. *AR* at 594-596. Chief District Judge Armijo, acting on the Proposed Findings and Recommended Disposition of Chief Magistrate Judge Molzen, reversed ALJ Farris's findings and remanded the case for further proceedings by the Commissioner on June 29, 2015. *See AR* at 608-624. The Appeals Council subsequently remanded the case "to an Administrative Law Judge for further proceedings consistent with the order of the court" on October 19, 2015. *AR* at 629-632. The Appeals Council also determined that the case would be remanded to a different ALJ. *AR* at 632.

Meanwhile, Plaintiff filed his claim for supplemental security income under Title XVI of the Act as well as a second claim for disability insurance benefits under Title II of the Act on December 6, 2013, with a protective filing date of December 2, 2013. *See AR* at 863-870. The Administration issued a favorable decision on Plaintiff's Title XVI application, finding Plaintiff to be disabled as of December 2, 2013, for the purposes of that title. *See AR* at 581. However, it denied benefits for the period prior to that date. *See id.* It also denied Plaintiff's second application for Title II benefits both initially and upon reconsideration. *AR* at 567-568, 592, 635-642.

The Appeals Council recognized that Plaintiff's first and second applications for Title II benefits were duplicative, and directed the newly assigned ALJ to "consolidate the claim files, create a single electronic record, and issue a new decision on the consolidated claims[.]" *AR* at 629. The Appeals Council further directed the new ALJ to examine the period prior to December 2, 2013, for the purposes of Plaintiff's Title XVI claim. *Id.*

A third *de novo* hearing was held before ALJ Pardo ("the ALJ") on April 26, 2016. *See AR* at 505-566. Ultimately, the ALJ issued an unfavorable decision on June 2, 2016. *AR* at 481-504. The Appeals Council did not assume jurisdiction over the case, and so ALJ Pardo's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.984(d), 416.1484(d). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) 416.920(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 25, 2008, his alleged onset date. *AR* at 490. At Step Two, he determined that Plaintiff has the following severe impairments: "arthritis, gout, kidney failure, and fibromyalgia[.]" *AR* at 490. At Step Three, the ALJ concluded that Plaintiff's

---

[2] The Tenth Circuit recently summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 491.

When a plaintiff does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1; *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In this case, the ALJ determined that Plaintiff retains the RFC to

> perform light work (lift 20 pounds occasionally, stand/walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday) as defined in 20 CFR 404.1567(b) and 416.967(b) except he can never kneel, crouch, crawl or climb ladders, ropes or scaffolds. He can occasionally stoop and climb ramps or stairs. The claimant must avoid all exposure to extreme heat. Time off task can be accommodated by normal breaks.

*AR* at 491.

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert, the ALJ determined that Plaintiff is unable to perform his past relevant work as a cook and roofer. *AR* at 494. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform despite his limitations. *AR* at 495. Specifically, the ALJ determined that Plaintiff retains the functional capacity to work as housekeeper and line attendant. *AR* at 495. Accordingly, the ALJ determined that Plaintiff is not disabled as a matter of law and denied benefits under Title II from February 25, 2008, through the date of his decision, and under Title XVI for the period of February 25, 2008 through December 2, 2013. *AR* at 496.

## III.    Legal Standards

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were

applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . . A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quoted authority omitted). The Court must "'meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met.'" *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). However, the Court "cannot reweigh the evidence or substitute [its] judgment for that of the [Commissioner]." *Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991). Rather, where the Court "can follow the adjudicator's reasoning in conducting [its] review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary*, 695 F.3d at 1166.

## IV.    Analysis

Plaintiff appeals the ALJ's decision on two grounds. *See Doc. 18*. First, he argues that the ALJ improperly rejected the opinion of Elizabeth Etherton, CNP. *Id.* at 1. Second, he argues that the ALJ's "RFC is not based on substantial evidence because he failed to account for Mr. Valdez's functional limitations stemming from pain and other symptoms." *Id.*

### A)  Weight Assigned to Ms. Etherton's Opinion

Elizabeth Etherton, CNP, treated Plaintiff "approximately 12 times between February 2011 through November 2013." *Doc. 18* at 19 (citing *AR* at 464-71, 1056-89). On February 8,

2012, Ms. Etherton wrote a letter on Plaintiff's behalf - the opinion that is at issue here. *AR* at 480. In this letter, Ms. Etherton opined that Plaintiff "suffers from severe chronic inflammatory arthritis which resembles rheumatoid arthritis, but has been diagnosed as severe tophaceous gout and confirmed by characteristic swelling, deformities, elevated uric acid, sodium urate crystals on examination and changes in radiographs." *AR* at 480. Ms. Etherton stated that Plaintiff "continues to have synovial thickening in his wrists, MCP joints, knees and ankles." *AR* at 480. As a result, Ms. Etherton opined that Plaintiff is "completely disabled for all forms of work[.]" *AR* at 480. Specifically, Ms. Etherton opined that Plaintiff

> can only stand for less than an hour continuously and not more than 1 hour during the 8 hour day. The patient can sit for 1 hour continuously, and 2 hours in an 8 hour day. The patient cannot perform repetitive motions with the upper extremities or lower extremities due to arthritis. Due to the arthritis, the patient can occasionally lift less than 10 pounds, but cannot due (sic) this frequently. Stand and walking are impaired, and the patient can perform these less than 1 hours. The patient can never climb, occasionally balance, occasionally stoop, never crouch, never kneel, and occasionally crawl. The patient is impaired by forceful reaching, handling, pushing/pulling, but is not severely impaired in feeling, memory, speaking or seeing. Due to arthritis and weakness in the legs, heights, moving machinery, temperature extremes, dust, fumes, humidity and vibration are dangerous. The patient is also restricted as far as noise and chemicals are concerned. Because of arthritis and swelling affecting the hands, knees, and feet, chronic pain and fatigue, the patient is not employable presently.

*AR* at 480. Moreover, even though Plaintiff was "under therapy," it was Ms. Etherton's "opinion that the patient is completely disabled for all work as he has not responded to the currently available therapy." *AR* at 480.

The ALJ effectively rejected this opinion after reviewing the records that predated it. *AR* at 493. Plaintiff argues that this determination was in error as a matter of law because the reasons given for it were too vague, and, alternatively, were unsupported by substantial evidence. *Doc. 18* at 18-19. The Court, having meticulously reviewed the record, disagrees.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (cited regulations omitted). However, there is a distinction in the regulations between "acceptable" medical sources and those that are not. *See* SSR 06-03p, 2006 WL 2329939 at *2. "'Acceptable medical sources' include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* Any other medical provider is referred to as an "other source." *Id.* The distinction is "necessary" because only "acceptable medical sources" can "establish the existence of a medically determinable impairment," give "medical opinions"[3] and be considered "treating sources[4] . . . whose medical opinions may be entitled to controlling weight." *Id.* This is not to say that "other sources" are unimportant. To the contrary, as the Commissioner recognized when promulgating SSR 06-03p: "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 232939 at *3. As such, while information from "other sources" "cannot establish the existence of a medically determinable impairment . . . information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) (explaining that while "other sources" cannot *diagnose* an

---

[3] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(1), 416.927(a)(1).

[4] "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

impairment, their opinions are relevant to "the questions of *severity* and *functionality*") (citing *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007)). "Other medical evidence[,]" which "is evidence from a medical source that is not objective medical evidence or a medical opinion" as defined by the regulations, includes a claimant's medical history, clinical findings, and "treatment prescribed with response." 20 C.F.R. §§ 404.1513(a)(3), 416.913(a)(3).

Medical evidence and opinions from "other sources" are weighed using the factors stated in 20 C.F.R. §§ 404.1527(c)(1) through (c)(6) and 416.927(c)(1) through (c)(6). *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1). These factors include: (1) the examining relationship; (2) the treatment relationship; (3) supportability of the opinion; (4) consistency of the medical opinion with the record as a whole; (5) specialization; and, (6) any "other factors" "which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see also Crowder v. Colvin*, 561 F. App'x 740, 744 (10th Cir. 2014). "[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); *see also* SSR 06-03p, 2006 WL 2329939 at *4. Ultimately, "[i]n the case of a nonacceptable medical source like [Ms. Etherton], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (quoting *Keyes-Zachary*, 695 F.3d at 1164, in turn quoting SSR 06-03p, 2006 WL 2329939 at *6).

The ALJ dealt with Ms. Etherton's February 8, 2012, opinion, and the treatment notes predating it, in the following manner:

> In 2011, nurse practitioner Elizabeth Etherton noted the claimant was receiving no medicinal treatment for his kidneys because of intolerance to initial trials (Ex. 13F). She found him tender to palpation in several areas but lacking synovitis in the hands, lacking inflammation in his feet and with a full range of motion.

> Etherton also assessed fibromyalgia, but I cannot adopt it as an impairment on that basis because she is not an acceptable medical source. Regardless, she also stated it is well-controlled by amitriptyline tablets (Ex. 13F/8). A year later, Etherton submitted a letter wherein she opined that what had been diagnosed as gout was better thought of as chronic inflammatory arthritis characterized by elevated uric acid, sodium urate crystals and swelling (Ex. 15F). She observed synovial thickening in various joints and considered the claimant unable to stand more than one hour or sit more than two hours in a workday. She also ruled out most postural activities and the ability to lift over 10 pounds. She did not feel he could work (Ex. 15F). Etherton did not provide an explanation for her limitation on sitting, and her statement as a whole is greatly out of proportion to her treatment notes, which described little in the way of objective findings. Inconsistent both internally and externally, she receives little weight.

*AR* at 493. In other words, the ALJ "effectively rejected" Ms. Etherton's opinions as stated in her February 8, 2012, letter. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (same).

Plaintiff argues that "ALJ Pardo's reasons for rejecting CNP Etherton's opinion is (sic) facially dubious and too vague." *Doc. 18* at 18 (citing *Lewis v. Berryhill*, 680 F. App'x (10th Cir. Feb. 21, 2017). In *Lewis*, the Tenth Circuit reversed an ALJ's rejection of a physician's opinion on the grounds that the doctor had written the opinion sixteen months after his last examination and because the assessment was inconsistent with other medical evidence. *Lewis*, 680 F. App'x at 647. The Tenth Circuit explained that the first reason was "facially dubious" because "the administrative law judge failed to explain why this delay mattered." *Id.* The second reason was "too vague" because the ALJ failed to specify which part of the record the doctor's opinion was inconsistent with. *Id.* As such, the Tenth Circuit concluded that the ALJ failed to adequately explain his rejection of the doctor's assessment. *Id.* at 648.

Here, the ALJ gave four reasons for rejecting Ms. Etherton's opinion: (1) she did not explain her limitation on sitting, (2) her statement as a whole was greatly out of proportion to her treatment notes, which described little in the way of objective findings, (3) it is internally inconsistent, and (4) it is externally inconsistent. *AR* at 493. None of these reasons are "facially dubious" under the regulations. *See* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6); *see Harrold v. Berryhill*, 2017 WL 4924662, at *5 (10th Cir. Oct. 31, 2017) (supportability and consistency with the record are "facially valid" reasons for not crediting an opinion). While the ALJ fails to address Plaintiff's examining and treatment relationship with Ms. Etherton, or her specialty, his reasons touch upon the supportability of the opinion and consistency of the opinion with the record. *See id.* However, the Court agrees with Plaintiff that the ALJ's third and fourth reasons are too vague, as the ALJ does not explain how the opinion is internally and externally inconsistent. As such, this case turns upon whether the ALJ's first and second reasons are supported by substantial evidence.

As to the first reason, Plaintiff argues that "a treating source can rely on their treatment relationship with the claimant, records, and knowledge of the claimant's impairments from previous examinations without detailing objective findings supporting their assessments in the source opinion itself." *Doc. 18* at 19 (citing 20 C.F.R. § 404.1527(c)(2)). While it is true that a treating source "may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone," 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), the regulations also provide that "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

Having reviewed Ms. Etherton's letter in the first instance, the Court does not fault the ALJ for according her opinions "little weight" as to Plaintiff's ability to sit on the basis that she failed to explain why Plaintiff's ability to sit is so greatly impaired.

Moreover, and more importantly, the ALJ's second reason, that the assessment is "greatly out of proportion with her treatment notes," *AR* at 493, is supported by substantial evidence. Plaintiff objects that this reason was not specific enough under *Lewis*, because the ALJ failed to offer specific examples to explain why the assessment is out of proportion with Ms. Etherton's treatment notes. *See Doc. 19* at 24. The Court, however, disagrees. Prior to giving this reason and discussing Ms. Etherton's opinion, the ALJ reviewed the medical records predating it. *AR* at 493. The Court has also reviewed these records, and finds that substantial evidence supports the ALJ's assessment that the limitations Ms. Etherton stated are greatly out of proportion to the objective findings stated therein.

On February 22, 2011, Plaintiff presented to Ms. Etherton as part of his comprehensive treatment by the University of New Mexico Hospital system. *AR* at 469. Specifically, Ms. Etherton noted that he was being "followed in the Rheumatology Clinic for recurrent and refractory gout secondary to chronic kidney disease." *AR* at 469. Ms. Etherton noted that Plaintiff was "very pleasant," complaining only of low back pain at a level of 4/10 which was most likely related to a herniated disc.[5] *AR* at 469. Plaintiff also "endorse[d] chronic body pain and poor sleep quality but states that has been improved with the amitriptyline." *AR* at 469. Ms. Etherton's review of Plaintiff's symptoms was largely normal; Plaintiff reported full body pain but stated that it was improved. *AR* at 470. Upon her physical examination of Plaintiff, Ms. Etherton noted that he appeared "well and in no acute distress." *AR* at 470. She went on to note

---

[5] Ms. Etherton wrote that Plaintiff was being followed by Orthopedics for his herniated disc. *AR* at 469. While surgery was recommended, Ms. Etherton noted that Plaintiff "does not want this." *AR* at 469.

that "[t]here is no active synovitis[6] in the hands. Good range of motion wrists, elbows, shoulders, no inflammation in his feet noted. He is positive for numerous tender points." *AR* at 470. In terms of his laboratory results, Plaintiff's Uric acid had "risen from 4.5 in October 2010 to over 8." *AR* at 470. Ms. Etherton assessed Plaintiff with "a history of gout secondary to chronic kidney disease." *AR* at 470. In terms of a plan, as to his gout, she decided to "continue his current treatment, which includes colchicine, febuxostat and occasional prednisone[.]" *AR* at 470. As to his fibromyalgia, Ms. Etherton noted that it was "well controlled at present with amitriptyline[.]" *AR* at 470. Plaintiff was instructed to return in six months for a follow-up. *AR* at 470.

On July 14, 2011, Plaintiff presented to Ms. Etherton for a follow up visit for gouty arthritis. *AR* at 464, 1056. It was noted that "[h]e currently is being managed on nothing as he was unable to afford the febuxostat and did not tolerate allopurinol." *AR* at 464, 1056. Plaintiff's chief complaint was of bilateral leg pain rated at a 4/10, which Ms. Etherton related to Plaintiff's compression of his L5-S1. *AR* at 464, 1056. Ms. Etherton's review of Plaintiff's systems was normal except for his complaints of leg pain. *AR* at 465, 1057. In terms of her physical examination, Ms. Etherton wrote that Plaintiff "appears well and in no acute distress." *AR* at 465. Additionally, she noted that "[t]here is no active synovitis in the hands. Range of motion wrists, elbows and shoulders. No inflammation in his feet. He is positive for numerous tender points." *AR* at 465, 1057. In terms of his labs, Plaintiff's uric acid was elevated at 9.5. *AR* at 465, 1057. Ms. Etherton's assessment of "history of gout secondary to chronic kidney disease" remained unchanged. *AR* at 465, 1057. His medications were refilled, he was started on Cymbalta "for treatment of his chronic musculoskeletal pain issues[,]" and he was switched from amitriptyline

---

[6] Synovitis is defined as "[i]nflammation of a synovial membrane, especially that of a joint; in general, when unqualified, the same as arthritis." Stedmans Medical Dictionary 891270 (West 2014).

to cyclobenzaprine. *AR* at 465, 1057. He was instructed to return to the clinic in approximately four months. *AR* at 465, 1057.

Plaintiff next saw Ms. Etherton on January 26, 2012.[7] *AR* at 1059. Plaintiff complained of pain in his low back as well as his bilateral knees, rated at an 8/10. *AR* at 1059. Of note, Plaintiff was "currently not taking any of the medications that were previously ordered as they were sent to one pharmacy and were not transferred to his new pharmacy." *AR* at 1059. Plaintiff's wife accompanied him to this visit, and she stated "that they both are very frustrated that we have not been able to get his disease process under control and that he is unable to work." *AR* at 1060. Ms. Etherton's review of Plaintiff's systems was normal, although he complained "of bilateral knee pain, right over left, as well as low back pain." *AR* at 1060. Upon her physical examination, Ms. Etherton noted that Plaintiff was in "mild distress due to the pain." *AR* at 1061. Still, "[t]here [was] no active synovitis in the hands, wrists, elbows or shoulders. Range of motion is full, upper and lower extremities. [Plaintiff's] right knee [was] tender to palpation and positive for crepitus.[8] The left knee [was] unimpressive." *AR* at 1061. Plaintiff's uric acid level was at a 9. *AR* at 1065. Ms. Etherton refilled Plaintiff's medications and upped the dose on his allopurinol in the hope of lowering his uric acid. *AR* at 1061. Plaintiff was scheduled for a follow-up visit on March 5, 2012. *AR* at 1061.

As the ALJ recognized, nothing in these notes suggests that Plaintiff's ability to sit is limited by his gout-related symptoms. Likewise, nothing in these notes supports Ms. Etherton's opinion that Plaintiff is disabled from all work, and a mere "statement by a medical source that

---

[7] He had been to the clinic in the meantime, on November 14, 2011, complaining of bilateral leg pain and swelling. *See AR* at 477.

[8] Crepitus is"[a] clinical sign in medicine that is characterized by a peculiar crackling, crinkly, or grating feeling or sound under the skin, around the lungs, or in the joints." <https://www.medicinenet.com/script /main/art.asp?articlekey=12061>.

you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). As such, "what Plaintiff is asking this Court to do is to 'reweigh' the evidence and to draw a different conclusion from it than did ALJ [Pardo]. This is neither allowed … nor warranted in this case." *Jacquez v. Berryhill*, 2017 WL 2509922, at *6 (D.N.M. Mar. 27, 2017) (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005)). To the contrary, the ALJ's conclusion is supported by substantial evidence.

Plaintiff challenges ALJ Pardo's findings (asserting they are unsupported by substantial evidence) by reference to treatment notes post-dating Ms. Etherton's opinion. *See Doc. 18* at 20. As stated above, this Court's duty is to "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262 (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). As such, the Court has reviewed these records. Unfortunately for Plaintiff, they do not provide the Court with reason to second-guess the ALJ's decision.

Plaintiff returned to Ms. Etherton on March 5, 2012, for a "routine" follow-up. *AR* at 1063. Ms. Etherton's review of Plaintiff's systems was generally normal, although he did complain of "left knee pain medial portion, slightly below his knee." *AR* at 1064. Under "Objective," Ms. Etherton noted that "[t]here [was] no active synovitis in the hands, wrists, elbows or shoulders. [Plaintiff had] full range of motion upper and lower extremities although [his] left knee [was] tender to palpation." *AR* at 1064. Significantly, Plaintiff's uric acid levels had decreased from 9 to 4.6, which is in the normal range. *AR* at 1065. Ms. Etherton's plan for Plaintiff was to continue his febuxostat, "as the urica (sic) acid goal of 4.5 has been reached." *AR* at 1065. She also noted that he was supposed to be taking gabapentin "for signs of fibromyalgia." Plaintiff's lumbar disc herniation was noted to be "stable at present." *AR* at 1065. Plaintiff was

advised to return to Ms. Etherton in July of 2012. *AR* at 1065. He was also prescribed a cane, "as that makes it easier for him to walk." *AR* at 1065.

Plaintiff was next seen at "an emergency visit for gouty arthritis with severe left knee pain" on April 11, 2012. *AR* at 1067. Upon review of Plaintiff's symptoms, Ms. Etherton noted that Plaintiff reported poor sleep and generalized muscle aches and pains as well as "left knee pain medial portion, slightly below his knee." *AR* at 1068. Ms. Etherton's examination revealed "no active synovitis in the hands, wrists, elbows or shoulders. The patient has full range of motion upper and lower extremities although the left knee is tender to palpation." *AR* at 1069. In terms of her assessment and plan, Ms. Etherton stated that Plaintiff's Gout is "well controlled." *AR* at 1069. Ms. Etherton increased Plaintiff's gabapentin to account for his suspected fibromyalgia symptoms. She noted that his lumber disc herniation was "stable at present." *AR* at 1069. Plaintiff was again advised to return to the clinic in July of 2012. *AR* at 1070.

However, Plaintiff returned on April 25, 2012, for "an emergency visit for severe left knee pain with swelling." *AR* at 1071. On examination, Ms. Etherton noted "no active synovitis in the hands, wrists, elbows or shoulders. The patient has full range of motion upper and lower extremities although the left knee is tender to palpation, with slight effusion." *AR* at 1073. Ms. Etherton assessed "osteoarthritis of left knee, most likely due to occupational hazards." *AR* at 1073. Plaintiff's gout was noted to be "well controlled" and his lumbar disc herniation was "stable at present." *AR* at 1073. Plaintiff was "encouraged to exercise, despite pain" and was told to follow-up in May, 2012. *AR* at 1073. It does not appear as though Plaintiff followed up.

Instead, Plaintiff was next seen on October 22, 2012, "for re-evaluation of gout." *AR* at 1075. Ms. Etherton noted that "[h]e has a history of non-adherence to his gout medications for several different reasons" and Plaintiff's uric acid levels had increased to 6.3. *AR* at 1075-1076.

Plaintiff reported "left ankle pain with general pain in all joints." *AR* at 1076. However, on examination Plaintiff "appear[ed] well and in no acute distress." *AR* at 1076. There was "no active synovitis in the hands, wrists, elbows or shoulders. The patient [had] full range of motion upper and lower extremities although the left ankle [was] tender to palpation, with slight effusion." *AR* at 1076. Ms. Etherton assessed gout, which was "well controlled" and lumbar disc herniation, "stable at present." *AR* at 1077. Plaintiff's medications were continued and he was advised to return in March of 2013. *AR* at 1077.

Plaintiff returned on March 7, 2013. *AR* at 1078. It was again noted that Plaintiff "has a history of non-adherence to his gout medications for several different reasons" (he ran out of colchicine[9]). He complained of right knee pain lasting a week associated with an area of hard swelling. *AR* at 1078-1079. It was noted that "[h]e stays active around the house." *AR* at 1078. On examination, Ms. Etherton noted "no active synovitis in the hands, wrists, elbows or shoulders. The patient has full range of motion upper and lower extremities although the left ankle is tender to palpation, with slight effusion. Right knee shows positive crepitus over the patella with hardened nodule over patella." *AR* at 1079. Plaintiff's uric acid levels had increased to 7.1. *AR* at 1080. Radiologically, his right knee had "intratendinous gouty tophus," his left knee showed "osteophytes consistent with osteoarthritis" and his right ankle showed "hyperostosis along the top of the heel bone consistent with gouty changes." *AR* at 1080. Plaintiff was assessed with gout "fair control." *AR* at 1080. His medications were continued, and he was "encouraged to increase his weight bearing activity." *AR* at 1080. Ms. Etherton expected Plaintiff back in April. *AR* at 1080.

---

[9] "Colchicine is used to prevent or treat attacks of gout (also called gouty arthritis)."
<https://www.mayoclinic.org/drugs-supplements/colchicine-oral-route/description/drg-20067653>.

Plaintiff's next visit with Ms. Etherton in the record did not occur until September 17, 2013, when he presented "for re-evaluation of gout." *AR* at 1082. Ms. Etherton noted that he had "a known tophus on his right knee cap, which causes him pain. He does not exercise, because 'it hurts'. He has been counseled repeatedly on the need to use his joints as he also has gouty arthropathy, which will continue to worsed (sic) without exercise." *AR* at 1082. Plaintiff "continue[d] to complain of pain, especially in both knees and the top of his right foot." *AR* at 1082. However, it was noted that Plaintiff "stays active around the house." *AR* at 1083. Plaintiff also refused injections. *AR* at 1083. On examination, Ms. Etherton noted "no active synovitis in the hands, wrists, elbows or shoulders. The patient has full range of motion upper and lower extremities although the right ankle is tender to palpation. Right knee shows positive crepitus over the patella with hardened nodule over patella. Left knee exam normal without effusion." *AR* at 1084. Plaintiff's uric acid level had increased to 8.6. *AR* at 1084. Plaintiff's gout was noted to be poorly controlled "with continued hyperuricemia." *AR* at 1084. In addition to increasing his dose of febuxastat Plaintiff was "encouraged to increase his weight bearing activity." *AR* at 1084.

The final appointment in the record is from November 14, 2013, when Plaintiff presented to Ms. Etherton complaining of chronic right leg pain. *AR* at 1086. He reported that he was on a good regimen for treatment of his gout, but "went off his gout diet over the weekend and suffered a flare[.]" *AR* at 1086. Ms. Etherton again noted that Plaintiff "states he stays active around the house[.]" *AR* at 1087. On examination, Plaintiff had "no effusions, lumps, bumps or nodules on his hands, wrists, or elbows." *AR* at 1087. He did "have a tender right knee to palpation with effusion. His left knee [was] within normal limits." *AR* at 1087-1088. "Unfortunately, [Plaintiff] did not have his labs drawn as discussed to evaluate for his uric acid." *AR* at 1088. In terms of a plan, Ms. Etherton noted that the increase in Plaintiff's medications

would take "approximately 3-4 months to kick in" and he was "encouraged to increase his weight bearing activity." *AR* at 1088.

As these records demonstrate, nothing in Ms. Etherton's treatment notes supports the severe limitations she opined to in her February 2012, letter. To the contrary, her treatment notes consistently revealed a full range of motion in Plaintiff's extremities and gout which was "well-controlled" when he was compliant with his diet and medication. The Commissioner makes this point in her response brief, citing to the same records that were just described. *See Doc. 20* at 9-10. Plaintiff complains that the same is "an impermissible *post hoc* analysis of some treatment notes in order to bolster ALJ Pardo's justification for rejecting CNP Etherton's opinion," *Doc. 21* at 2, but it was Plaintiff who invited the Court to review records post-dating Ms. Etherton's February 2012 opinion. *See Doc. 18* at 19-20. More to the point, there was no need for the ALJ to reference these records, as they generally supported his conclusion. *See Watts v. Berryhill*, 2017 WL 4862424, at *2 (10th Cir. Oct. 27, 2017) (citing *Keyes-Zachary*, 695 F.3d at 1163).

In sum, while the Court could find some technical fault with the ALJ's explanation for rejecting Ms. Etherton's opinion it can follow his reasoning. *Keyes-Zachary*, 695 F.3d at 1163 (quoting SSR 06–03p, 2006 WL 2329939, at *6). As such, the Court will affirm the ALJ's treatment of Ms. Etherton's opinion.

**B) Whether the ALJ's RFC is Supported by Substantial Evidence**

Plaintiff argues that the ALJ's RFC is not based on substantial evidence because "he failed to account for Mr. Valdez's limitations stemming from pain and other symptoms." *Doc. 18* at 20. Specifically, Plaintiff argues that the ALJ failed to evaluate whether the objective and subjective evidence shows his pain is disabling, as required by *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987). *See Doc. 18* at 22-23. In response, the Commissioner argues that "the ALJ gave

reasons grounded in the evidence for his finding," including that "Plaintiff's complaints regarding the extent of his knee and leg pain were unsupported by the record." *Doc. 20* at 11 (citing *AR* at 494). For the reasons that follow, the Court will not disrupt the ALJ's findings.

This Court begins with the proposition that "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." SSR 16-3P, 2017 WL 5180304, *2. Additionally, "subjective symptom evaluation," formerly known as "[c]redibility[,][10] determinations are peculiarly the province of the finder of fact and will not be overturned when supported by substantial evidence." *Watts*, 2017 WL 4862424, at *3 (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010)). Still, under *Luna* and its progeny,

> the ALJ must consider and determine: (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

*Brownrigg v. Berryhill*, 688 F. App'x 542, 545 (10th Cir. April 19, 2017) (quoting *Keyes-Zachary*, 695 F.3d at 1166-67). An ALJ is not required to cite to *Luna* if he states its paradigm. *Razo v. Colvin*, 663 F. App'x 710, 717 (10th Cir. 2016). Factors under the regulations relevant to the determination of whether a claimant's pain is in fact disabling include:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

---

[10] The Administration eliminated the use of the term "credibility" from its sub-regulatory policy for the purpose of clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, *2.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3P, 2017 WL 5180304, *7-8; *see Watts*, 2017 WL 4862424, at *3. Findings as to a claimant's subjective pain "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. . . . But we do not require a formalistic factor-by-factor recitation of the evidence." *Watts*, 2017 WL 4862424, at *3 (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000)). To the contrary, an ALJ need only discuss those factors that are "relevant to the case." SSR 16-3P, 2017 WL 5180304, *8.

"Symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques. However, objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities[.]" SSR 16-3P, 2017 WL 5180304, *5. That said, "we will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." *Id.* Rather, "if we cannot make a disability determination or decision that is fully favorable based solely on objective medical evidence, then we carefully consider other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms." *Id.* at *6.

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities. . . .

*Id.* at *8. With these standards in mind, the Court turns to the ALJ's discussion of Plaintiff's pain in this case.

The ALJ addressed Plaintiff's pain and related symptoms at the end of his decision. *AR* at 493-494. That is, it was preceded by the ALJ's summarization of Plaintiff's testimony and that of his wife, a discussion of the medical record, including the opinions of consultative examiner Sylvia Ramos, M.D., Plaintiff's radiologic results, his treatment for gout (including one provider's opinion that he "doubted he was compliant with gout medication"), and Plaintiff's kidney functioning. *AR* at 491-493. After this discussion, the ALJ made the following finding:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. When considering the claimant's exertional abilities, I note that imaging of the spine has consistently revealed no more than minor degeneration, certainly not enough to support complete inability to perform work activities. Conversely, renal deficiency and gout are well established impairments, but even they stabilized and ameliorated after settling on compatible medications. At times, the claimant evidently had little to report to doctors, his checkups becoming spaced further apart, and when a gout flare-up did occur, Dr. Peisajovich pointed no (sic) medicinal noncompliance. To an extent, this case boils down to subjective pain. Doctor Ramos saw some manifestations of pain in the knees and feet but otherwise described a fairly functional person. In combination, the evidence warrants limiting the claimant to light work with little in the way of postural activities requiring bending of the knees. That said, the alleged limitations on standing/walking are not supported by the evidence, and I find the claimant could still stand/walk a total of six hours in an eight-hour workday.

*AR* at 493-494. To summarize, the ALJ stated the *Luna* paradigm, compared Plaintiff's alleged symptoms with the objective medical evidence, and permissibly "determine[d] that [Plaintiff's] symptoms are less likely to reduce his or her capacities to perform work-related activities[,]" as is permitted by SSR 16-3P. 2017 WL 5180304, *8. In doing so the ALJ correctly considered the objective medical evidence and touched upon regulatory factors by summarizing what he

perceived to be precipitating and aggravating factors of Plaintiff's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(2)-(3), 416.929(c)(2)-(3).

Plaintiff complains that in evaluating his pain, the ALJ "failed to credit Mr. Valdez's own testimony of his limitations due to pain, as well as the third-party statements and testimony of Mr. Valdez's wife, and the third-party statement of Mr. Valdez's father, all of which corroborate that testimony." *Doc. 21* at 3. However, the ALJ made his findings after "careful consideration of the entire record," *AR* at 491, and this Court must "take the ALJ at his word" when he says he has considered a matter, "unless shown otherwise." *Watts*, 2017 WL 4862424, at *2 (citing *Wall*, 561 F.3d at 1070). In essence, Plaintiff is "asking this court to impermissibly reweigh the evidence and improperly substitute [my] judgment for the Commissioner's, which [I] may not do." *Watts*, 2017 WL 4862424, at *3 (citing *Qualls*, 206 F.3d at 1371).

## V.     Conclusion

The ALJ's rejection of Ms. Etherton's opinion is supported by valid reasons which are tied to substantial evidence of record, and the ALJ permissibly concluded that Plaintiff's pain is not so severe as to preclude him from work. Accordingly, while Plaintiff is surely limited to some degree by his impairments, he has failed to demonstrate that the ALJ committed harmful, reversible, error in concluding that he is not disabled as a matter of law.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 18*) is **denied**.

**IT IS FURTHER ORDERED** that a Final Order pursuant to Rule 58 of the Federal Rules of Civil Procedure be entered affirming the decision of the Acting Commissioner and dismissing this action with prejudice.

UNITED STATES MAGISTRATE JUDGE
Presiding by Consent